E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
KEITH D. ELLISON (Cal. Bar No. 307070)
JASON C. PANG (Cal. Bar No. 296043)
VARUN BEHL (Cal. Bar No. 295509)
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone:      (213) 894-5339/6920/2652/0687
Facsimile:      (213) 894-0141
Email:          shawn.nelson@usdoj.gov
                keith.ellison2@usdoj.gov
                jason.pang@usdoj.gov
                varun.behl@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-172(A)-GW-10 |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  February 28, 2023 |
| MICHAEL LERMA, et al., [#10-KELLY DESHANNON] | Trial Time:  8:30 a.m. Location:   Courtroom of the Honorable George H. Wu |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Shawn J. Nelson, Keith D. Ellison, Jason C. Pang, and Varun Behl, hereby files its Trial Memorandum.

//

//

This Trial Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 17, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


                                  _____/s/_____
                                  KEITH D. ELLISON
                                  JASON C. PANG
                                  VARUN BEHL
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES...............................................i

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    STATUS OF THE CASE...........................................1

      A.    Procedural Background..................................1

      B.    Trial Matters..........................................2

            1.    Trial Estimate...................................2

            2.    Expert Notices...................................2

            3.    Stipulations.....................................2

            4.    Witness Statements...............................4

            5.    Trial Filings....................................4

            6.    Motions *in Limine*..............................5

            7.    Presentation of Evidence.........................5

II.   ELEMENTS OF THE CHARGED OFFENSES.............................6

III.  ANTICIPATED EVIDENTIARY AND LEGAL ISSUES.....................6

      A.    Recorded Statements....................................6

            1.    Authentication and Identification................6

            2.    Transcripts of Recorded Statements...............8

            3.    Defendant's July 15, 2013 Interview..............9

      B.    Case Agent's Lay Testimony Will Aid the Jury's
            Understanding of the Certain Evidence.................11

      C.    Expert Opinion Testimony.............................14

      D.    Relevant Conspiracy Law..............................14

      E.    Law Related to Racketeering Conspiracy...............16

            1.    Enterprise......................................16

            2.    Interstate Commerce.............................17

            3.    Pattern of Racketeering Activity................18

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                          PAGE

       4.   RICO Conspiracy.....................................18

       5.   Evidence of Crimes Not Specifically Charged
          Against Defendant..................................19

  F.  Co-Conspirator Statements.............................20

  G.  Other Hearsay Exceptions..............................24

       1.   Past Recollection Recorded.........................24

       2.   Present Sense Impression...........................24

       3.   Defendant's Hearsay Statements.....................24

  H.  Business Records......................................25

  I.  Charts and Summaries..................................25

  J.  Photographs...........................................26

  K.  Pretrial Identification...............................27

  L.  Physical Evidence.....................................29

  M.  Prison and Jail Records of Inmates....................31

  N.  Cross-Examination of Defendant........................31

  O.  Character Evidence....................................32

  P.  Jury Nullification....................................33

  Q.  Affirmative Defenses..................................34

  R.  Reciprocal Discovery..................................34

  S.  Discretion as to Order of Proof.......................35

  T.  Jury Questions........................................36

  U.  Opening Statements....................................37

IV.  CONCLUSION................................................38

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

**Cases**

<u>Blumenthal v. United States</u>,
   332 U.S. 539 (1947) ................................. 12

<u>Bourjaily v. United States</u>,
   483 U.S. 171 (1987) ................................. 17

<u>Crawford v. Washington</u>
   541 U.S. 36 (2004) ................................. 17

<u>Gallego v. United States</u>,
   276 F.2d 914 (9th Cir. 1960) ....................... 25

<u>Garlington v. O'Leary</u>,
   879 F.2d 277 (7th Cir. 1989) ....................... 20

<u>Lucero v. Stewart</u>,
   892 F.2d 52 (9th Cir. 1989) ........................ 23

<u>Michelson v. United States</u>,
   335 U.S. 469 (1948) ............................. 27, 28

<u>People of Territory of Guam v. Ojeda</u>,
   758 F.2d 403 (9th Cir. 1985) ....................... 24

<u>Salinas v. United States</u>,
   522 U.S. 52 (1997) ................................. 15

<u>Smith v. United States</u>,
   133 S. Ct. 714 (2013) .............................. 12

<u>United States v. Abushi</u>,
   682 F.2d 1289 (9th Cir. 1982) ...................... 12

<u>United States v. Albertelli</u>,
   687 F.3d 439 (1st Cir. 2012) ........................ 9

<u>United States v. Ammar</u>,
   714 F.2d 238 (3d Cir. 1983) ........................ 19

<u>United States v. Andersson</u>,
   813 F.2d 1450 (9th Cir. 1987) .................... 10, 11

<u>United States v. Arambula-Ruiz</u>,
   987 F.2d 599 (9th Cir. 1993) ....................... 18

<u>United States v. Arias-Villanueva</u>,
   998 F.2d 1491 (9th Cir. 1993) ...................... 19

i

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Barnes,
  604 F.2d 121 (2d Cir. 1979) ................................... 20

United States v. Beltran-Rios,
  878 F.2d 1208 (9th Cir. 1989) ............................... 10

United States v. Black,
  767 F.2d 1334 (9th Cir. 1985) ........................... 25, 27

United States v. Boulware,
  470 F.3d 931 (9th Cir. 2006) ................................ 22

United States v. Chu Kong Yin,
  935 F.2d 990 (9th Cir. 1991) ................................ 25

United States v. Cloud,
  872 F.2d 846 (9th Cir. 1989) ................................ 11

United States v. Collom,
  614 F.2d 624 (9th Cir. 1979) ................................ 30

United States v. Crespo de Llano,
  838 F.2d 1006 (9th Cir. 1987) ............................... 17

United States v. De Peri,
  778 F.2d 963 (3d Cir. 1985) ............................... 9, 32

United States v. DiNome,
  954 F.2d 839 (2d Cir. 1992) ................................. 15

United States v. Echeverry,
  759 F.2d 1451 (9th Cir. 1985) ........................... 19, 20

United States v. El-Mezain,
  664 F.3d 467 (5th Cir. 2011) ................................. 9

United States v. Espinosa,
  827 F.2d 604 (9th Cir. 1987) ................................ 10

United States v. Fernandez,
  839 F.2d 639 (9th Cir. 1988) ........................... 13, 14

United States v. Francis,
  916 F.2d 464 (8th Cir. 1990) ................................ 13

United States v. Freeman,
  498 F.3d 893 (9th Cir. 2007) ................................. 8

United States v. Frega,
  179 F.3d 793 (9th Cir. 1999) ................................ 31

ii

1

**TABLE OF AUTHORITIES (CONTINUED)**

2

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

3

<u>United States v. Fuentes-Montiji</u>,
   68 F.3d 352 (9th Cir. 1995) ................................... 7

4

<u>United States v. Gadson</u>,
5   763 F.3d 1189 (9th Cir. 2014) ............................. 8, 10

6

<u>United States v. Garcia</u>,
   994 F.2d 1499 (10th Cir. 1993) ............................... 9

7

<u>United States v. Garza</u>,
8   980 F.2d 546 ................................................ 11

9

<u>United States v. Gil</u>,
   58 F.3d 1414 (9th Cir. 1995)(a) ............................. 17

10

<u>United States v. Harrington</u>,
11   923 F.2d 1371 (9th Cir. 1991) ............................... 25

12

<u>United States v. Hill</u>,
   42 F.3d 914 (5th Cir. 1995) ................................. 12

13

<u>United States v. Hubbard</u>,
14   96 F.3d 1223 (9th Cir. 1996) ............................... 12

15

<u>United States v. Hultgren</u>,
   713 F.2d 79 (5th Cir. 1983) ................................. 11

16

<u>United States v. Jayyousi</u>,
17   657 F.3d 1085 (11th Cir. 2011) ............................... 9

18

<u>United States v. Jimenez Recio</u>,
   537 U.S. 270 (2003) ........................................ 13

19

<u>United States v. King</u>,
20   472 F.2d 1 (9th Cir. 1972) ................................. 25

21

<u>United States v. King</u>,
   587 F.2d 956 (9th Cir. 1978) ................................. 5

22

<u>United States v. Krasovich</u>,
23   819 F.2d 253 ............................................... 12

24

<u>United States v. Layton</u>,
   720 F.2d 548 (9th Cir. 1983) ............................... 19

25

<u>United States v. Lechuga</u>,
26   888 F.2d 1472 (5th Cir. 1989) ............................... 20

27

<u>United States v. Loya</u>,
   807 F.2d 1483 (9th Cir. 1987) ............................... 18

28

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                         PAGE

United States v. Matta-Ballesteros,
    71 F.3d 754 (9th Cir. 1995) ..................................... 5

United States v. May,
    622 F.2d 1000 (9th Cir. 1980) ................................... 23

United States v. McCall,
    592 F.2d 1066 (9th Cir. 1979) ................................... 30

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) .................................... 28

United States v. McIver,
    186 F.3d 1119 (9th Cir. 1999) ................................... 31

United States v. Mendiola,
    707 F.3d 735 (7th Cir. 2013) ................................... 6

United States v. Miller,
    664 F.2d 94 (5th Cir. 1981) .................................... 20

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) .................................. 27

United States v. Nixon,
    418 U.S. 683 (1974) ........................................... 19

United States v. Oaxaca,
    569 F.2d 518 (9th Cir. 1978) ................................... 23

United States v. Orozco,
    590 F.2d 789 (9th Cir. 1979) ................................... 26

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) ................................... 21

United States v. Ortiz,
    776 F.3d 1042 (9th Cir. 2015) .................................. 6

United States v. Pena-Espinoza,
    47 F.3d 356 (9th Cir. 1995) .................................... 8

United States v. Perez,
    116 F.3d 840 (9th Cir. 1997) ................................... 10

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1992) .................................. 28

United States v. Rizk,
    660 F.3d 1125 (9th Cir. 2011) .................................. 22

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Rollins,
    544 F.3d 820 (7th Cir. 2008) ................................ 9-10

United States v. Rrapi,
    175 F.3d 742 (9th Cir. 1999) ................................ 7

United States v. Rubino,
    43127 F.2d 284 (6th Cir. 1970) .............................. 32

United States v. Santiago,
    837 F.2d 1545 (11th Cir. 1988) .............................. 20

United States v. Schmit,
    881 F.2d 608 (9th Cir. 1989) ................................ 18

United States v. Spawr Optical Research, Inc.,
    685 F.2d 1076 (9th Cir. 1982) ............................... 18

United States v. Stearns,
    550 F.2d 1167 (9th Cir. 1977) ............................... 23

United States v. Taghipour,
    964 F.2d 908 (9th Cir. 1992) ................................ 7

United States v. Thomas,
    586 F.2d 123 (9th Cir. 1978) ................................ 12

United States v. Tille,
    729 F.2d 615 (9th Cir. 1984) ........................ 13, 19, 20

United States v. Torres,
    908 F.2d 1417 (9th Cir. 1990) ............................... 5-6

United States v. Turner,
    528 F.2d 143 (9th Cir.1975) ................................. 7

United States v. Waters,
    627 F.3d 345 (9th Cir. 2010) ................................ 21

United States v. Watson,
    650 F.3d 1084 (8th Cir. 2011) ............................... 26

United States v. Weiland,
    420 F.3d 1062 (9th Cir. 2005) ............................... 26

United States v. Williams,
    989 F.2d 1061 (9th Cir. 1993) .......................... 18-19

United States v. Winters,
    530 F. App'x 390 (5th Cir. 2013) ........................... 24

v

### TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

United States v. Yarbrough,
    852 F.2d 1522 (9th Cir. 1988) ............................. 18, 20

United States v. Zavala-Serra,
    853 F.2d 1512 (9th Cir. 1988) ............................. 17-18

Zal v. Steppe,
    968 F.2d 924 (9th Cir. 1992) ................................. 28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   STATUS OF THE CASE

3

### A.   Procedural Background

4        The original indictment charged defendant Kelly Deshannon

5   ("defendant") and twelve other defendants with racketeering and drug-

6   related crimes related to their participation in the Michael Lerma

7   cell of the Mexican Mafia, which operated in and controlled the city

8   of Pomona, California and in some surrounding neighborhoods.

9   Defendant was arrested on May 25, 2018.  A First Superseding

10  Indictment returned on October 14, 2021, which charged defendant with

11  essentially the same charges.[1]

12       Defendant is charged with the following crimes: (1) Racketeer

13  Influenced and Corrupt Organizations Conspiracy ("RICO"), in

14  violation of 18 U.S.C. §  1962(d) (Count One); (2) Violent Crimes in

15  Aid of Racketeering Activity ("VICAR"), in violation of 18 U.S.C.

16  §§ 2, 1959(a)(3), 1959(a)(6) and California Penal Code §§ 31, 182,

17  245(a)(2), and (4) (Counts Two and Three); (3) Attempted Carjacking,

18  in violation of 18 U.S.C. §§ 2, 2119(2) (Count Twelve); and

19  (4) Discharging a Firearm During and in Relation to, and in

20  Furtherance of, Crimes of Violence and Drug Trafficking Crimes, in

21  violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(i), (ii), (iii) (Count

22  Thirteen).  Defendant has pleaded not guilty.  Trial is set to begin

23  on February 28, 2023.

24

25

26

27
_____

28       [1] The superseding indictment "cleaned out" defendants who have
    pled guilty and charged a murder committed by other members of the
    Enterprise.

**B.   Trial Matters**

    1.   Trial Estimate

The government currently estimates that its case-in-chief, including cross-examination will last about two weeks if it is unable to reach agreement with the defense about stipulations, as described more fully below.

    2.   Expert Notices

On September 17, 2019, the government provided notice of several expert witnesses expected to testify in its case-in-chief, including LASD Deputy Sheriff and FBI Task Force Officer Devon Self, FBI Special Agent Mike Easter, LASD Senior Criminalist Phil Teramoto, and a Spanish language expert, subsequently identified as Delio Gonzalez. On February 8, 2023, the government provided supplemental disclosures for Experts Self, Easter, and Teramoto.  On February 13, 2023, the government provided a supplemental disclosure for Expert Gonzalez. Defendant has not identified any defense experts.

    3.   Stipulations

The government has sent defense counsel ten proposed stipulations regarding the following:

    1.   W.M.'s Mercedes ML360 SUV had been transported, shipped, and received in interstate or foreign commerce;[2]

_____

[2] On January 5, 2023, government counsel emailed defense counsel a stipulation regarding W.M.'s Mercedes ML360 SUV being transported, shipped, and received in interstate or foreign commerce.  Later that day, defense counsel informed government counsel that "We have no problem stipulating that a Mercedes has travelled in interstate or foreign commerce - but getting my client's signature on the stip is not amongst my highest priorities at the moment."  The government has not yet received a signed stipulation from defendant.  If the parties are not able to stipulate to this fact, the government intends to call a witness and/or introduce other evidence on this matter.

2.   Certain exhibits are true and accurate English translations of Spanish language portions of recorded calls;

3.   The authenticity of the Colt, model Mustang Mark IV Series 80, 380 auto caliber semiautomatic pistol, bearing serial number MU58634, that Jose Valencia Gonzalez (also known as "Swifty") possessed and fired on July 14, 2013;

4.   The authenticity of photographs of Fred Aguirre (also known as "Thumper") taken on March 24, 2013, after he was shot and photographs of Sal Luna (also known as "Listo") taken on July 27, 2013, after he was assaulted in Los Angeles County Jail ("LACJ");

5.   The authenticity of photographs taken during the search of 1138 West Stoneridge Court, Unit E, Ontario, California 91762;

6.   The authenticity of letters sent between Cheryl Castaneda Perez to Michael Lerma on or about August 14, 2013 and August 24, 2013;

7.   The admissibility of certain call records as business records;

8.   The authenticity of a kite recovered from LACJ;

9.   The authenticity of certain LACJ jail call excerpts and the identification of voices on those LACJ jail calls; and

10.  The Michael Lerma of the Mexican Mafia (the "enterprise") existed as alleged in the First Superseding Indictment.[3]

To date, defense counsel has not agreed to the stipulations and has informed government counsel that he still evaluating these stipulations.  Defendant has not proposed any stipulations.

---

[3] On February 3, 2023, following the pretrial conference, defense counsel represented to government counsel that the defense would stipulate to the racketeering elements of the enterprise for the RICO charge.

3

### 4.   Witness Statements

The government has been providing witness statements from around the time of the takedown.  In anticipation of trial, the government has disclosed what it believes to be the Jenks statements of its witnesses, including grand jury transcripts.  The government is aware of its ongoing duty to produce newly created Jenks material.  To date, defense counsel has not produced any reciprocal discovery, despite the government's requests.

### 5.   Trial Filings

The government filed a proposed jury questionnaire on February 2, 2023.  Defense counsel informed the government that defendant had no objection to the government's proposed jury questionnaire.  (Dkt. 888.)  To date, defendant has not filed her own proposed jury questionnaire.

The government filed preliminary exhibit and witness lists on February 7, 2023.  (Dkts. 889, 890.)  To date, defendant has not filed a preliminary witness list or exhibit list.  The government will provide final witness and exhibit lists to the Courtroom Deputy Clerk on the morning of trial.

The government sent proposed jury instructions to defense counsel on February 11, 2023.  The government sent a verdict form to defense counsel on February 13, 2023.  To date, defense counsel has not provided his position on jury instructions and verdict form.  On February 16, defense counsel stated he is still evaluating the government's jury instructions and verdict form.  The government will file updated jury instructions and verdict form, if necessary, once it receives defense counsel's positions.  The government filed its proposed jury instructions and verdict form on February 17, 2023.

1     The government sent a proposed statement of the case to defense
2  counsel on February 13, 2023.  On February 16, defense counsel stated
3  he is still evaluating the government's proposed statement of the
4  case.  The government will file an updated statement of the case, if
5  necessary, once it receives defense counsel's positions.  The
6  government filed its statement on the case on February 17, 2023.

7          6.   Motions *in Limine*

8     Defendant has filed two motions <u>in</u> <u>limine</u>: (1) a motion to admit
9  excerpts of government briefs at trial; and (2) a motion to admit
10  recorded jail calls.  (Dkts. 873, 876.)  The government filed
11  oppositions to both motions.  (Dkts. 879, 880.)  Defendant filed a
12  reply in support of her motion to admit excerpts of government briefs
13  at trial.  (Dkt. 889.)  The government has filed two motions <u>in</u>
14  <u>limine</u>: (1) a motion to exclude improper reference, testimony, and
15  argument; and (2) a motion to exclude evidence regarding the
16  impeachment and cross examination of government witnesses.  Defendant
17  filed an opposition to the government's motion to exclude improper
18  reference, testimony, and argument.  (Dkt. 886.)  On February 13,
19  2023, the Court held a pretrial conference and motions hearing.  The
20  Court granted the government's motions <u>in</u> <u>limine</u> and took defendant's
21  motions <u>in</u> <u>limine</u> under submission.  (Dkt. 894.)

22          7.   <u>Presentation of Evidence</u>

23     The government intends to use the Trial Director software
24  program in order to display evidence via the in-Court monitors.  Such
25  evidence will include photographs and audio recordings.  The
26  government has prepared transcripts for its audio exhibits.  The
27  transcripts will be displayed on the monitors synced with the playing
28  audio.  The transcripts will also be authenticated by a competent

1  government witness.

2  **II.   ELEMENTS OF THE CHARGED OFFENSES**

3      The elements of the crimes are set forth in the Government's

4  Proposed Jury Instructions.  (Dkt. 898.)

5  **III. ANTICIPATED EVIDENTIARY AND LEGAL ISSUES**

6      The following legal issues may arise at trial.

7      **A.   Recorded Statements**

8      At trial, the government will offer a variety of written and

9  recorded statements.  The recorded oral statements will include those

10 made over an automated jail telephone recording system.  The

11 government will also offer written statements, primarily in the form

12 of "kites" (which are handwritten notes on scrap paper that are

13 smuggled by prisoners), and notebooks containing ledgers and other

14 notations.

15      1.   <u>Authentication and Identification</u>

16     The government expects to introduce audio recordings, in

17 particular Exhibits 200, 203, 210, 211B, 212, 213, 215, 216, 218,

18 219, 219A, 220, 220A, 227, 228, 229, 231, 233, 241, 242, 243, 245,

19 250, 252, 254, 262, 263, 266, 268, 272, 274, 278, 281, 284, 286, 287,

20 287A, 290, 293, 295, 296, 297, 299, 302, 304, 305, 308, 310, 311,

21 312, 314, 316, 317, 319, 321, 322, 323, 324, 325, 333, 335, 350, 356,

22 359, 361, 364, 366, 371, 372, 374, 375, 377, 378, 378, 387, 389, 392,

23 399, 400, 401, 404, 405, 407, 409, 411, and 412.  The recordings are

24 lengthy, so the government has made clips of the most pertinent

25 parts.  Each recording has been produced to the defense and has been

26 placed onto compact discs, which the government will offer as

27 exhibits at trial.

28

1    The foundation that must be laid for the introduction into

2    evidence of recorded conversations is a matter largely within the

3    discretion of the trial court.  There is no rigid set of foundational

4    requirements.  Rather, the Ninth Circuit has held that recordings are

5    sufficiently authenticated under Federal Rule of Evidence 901(a) if

6    sufficient proof has been introduced "so that a reasonable juror

7    could find in favor of authenticity or identification," which can be

8    done by "proving a connection between the evidence and the party

9    against whom the evidence is admitted" and can be done by both direct

10   and circumstantial evidence.  United States v. Matta-Ballesteros, 71

11   F.3d 754, 768 (9th Cir. 1995).

12   A recording is admissible upon a showing that it is "accurate,

13   authentic, and generally trustworthy."  United States v. King, 587

14   F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a

15   recording depicts evidence that the witness observed or is familiar

16   with from personal observations is sufficient to authenticate the

17   recording.  Fed. R. Evid. 901(b); United States v. Torres, 908 F.2d

18   1417, 1425 (9th Cir. 1990) ("Testimony of voice recognition

19   constitutes sufficient authentication.").  Recognition of a speaker's

20   voice is one way in which such authentication may occur along with

21   indicia in the calls themselves, such as the speakers' use of one

22   another's name.  Fed. R. Evid. 901(b)(5).  "The bar for familiarity

23   is not a high one.  This court has held that hearing a defendant's

24   voice once during a court proceeding satisfies the minimal

25   familiarity requirement."  United States v. Mendiola, 707 F.3d 735,

26   740 (7th Cir. 2013).

27   "Rule 901(b)(5) establishes a low threshold for voice

28   identifications -- an identifying witness need only be minimally

7

1   familiar with the voice he identifies." United States v. Ortiz, 776

2   F.3d 1042, 1044-45 (9th Cir. 2015) (internal quotation marks

3   omitted).  "Once the offering party meets this burden, the probative

4   value of the evidence is a matter for the jury." Id. (internal

5   quotation marks omitted).  Witnesses may testify competently as to

6   the identification of a voice on a recording.  A witness's opinion

7   testimony in this regard may be based upon his having heard the voice

8   on another occasion under circumstances connecting it with the

9   alleged speaker.  Fed. R. Evid. 901(b)(5); Torres, 908 F.2d at 1425

10  ("Testimony of voice recognition constitutes sufficient

11  authentication.").  In this case, absent a stipulation, the

12  government expects that Special Agent Talamantez will authenticate

13  the voices heard and persons seen on the recordings because he has

14  direct personal knowledge of the persons on the recordings, and thus

15  can identify both the visual person and the audio.

16         Recorded conversations are competent evidence even when they are

17  partly inaudible, unless the unintelligible portions are so

18  substantial as to render the recording as a whole untrustworthy.

19  United States v. Rrapi, 175 F.3d 742, 746 (9th Cir. 1999).  Here, for

20  each recording at least one witness (many times multiple witnesses)

21  will review and authenticate the audio.

22              2.   Transcripts of Recorded Statements

23         Due to the nature of the case and the evidence that the

24  government intends to introduce at trial, including jail calls and

25  kites, the government believes that transcripts would serve as an aid

26  to the jury while listening and looking at these various recordings.

27  See United States v. Turner, 528 F.2d 143, 167-68 (9th Cir. 1975);

28  United States v. Taghipour, 964 F.2d 908, 910 (9th Cir. 1992); United

1  States v. Fuentes-Montiji, 68 F.3d 352, 354-55 (9th Cir. 1995).

2      The government intends to introduce audio recordings from jail
3  calls.  For the recordings that are entirely in English, or where
4  there is a de minimis use of the Spanish language (such as greetings
5  or salutations), the recording is the evidence, not the transcript.
6  See Ninth Cir. Crim. Model Jury Instr. No. 2.6 (Transcript of
7  Recording in English).

8      Some of the recordings, however, contain both the English and
9  Spanish languages.  For such recordings, the transcripts contain
10 italicized portions of the conversations or writings that were
11 translated from Spanish to English.  For those italicized, Spanish
12 portions, the transcript is the evidence, not the foreign language
13 spoken or written in the recording.  See Ninth Cir. Crim. Model Jury
14 Instr. No. 2.7 (Transcript of Recording in Foreign Language).  Where
15 there is no dispute as to the accuracy of the transcription, the
16 district court is well within its discretion to allow jurors to use
17 such transcripts and to permit such exhibits into the jury room.
18 United States v. Pena-Espinoza, 47 F.3d 356, 359 (9th Cir. 1995); see
19 Fuentes-Montijo, 68 F.3d at 355 ("Where, as here, a district court is
20 faced with a jury that includes one or more bilingual jurors and the
21 taped conversations are in a language other than English,
22 restrictions on the jurors who are conversant with the foreign tongue
23 is not only appropriate, it may in fact be essential.").

24      3.   Defendant's July 15, 2013 Interview

25      In the morning of July 15, 2013, following defendant's arrest,
26 Covina Police Department detectives conducted a Mirandized interview
27 of defendant.  This interview was video and audio recorded.  The
28 government does not intend to use defendant's statements in this

interview during its case-in-chief unless the defense opens the door in opening, cross examination, or any other part of trial.  The government also reserves the right to impeach defendant with statements made during her interview if she chooses to testify.

The government may use a defendant's statements to impeach that defendant at trial even if the statements were obtained in violation of Miranda.  See Oregon v. Hass, 420 U.S. 714, 7222 (1975) (finding that even if a Miranda violation occurred, "the impeaching material would provide valuable aid to the [factfinder] in assessing the defendant's credibility" and "the shield provided by Miranda is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances"); United States v. Gomez, 725 F.3d 1121, 1128 (9th Cir. 2013) (finding that "use of [defendant's] prior inconsistent statement as impeachment evidence during rebuttal promotes what the Supreme Court. . . recognized as an important value: the truth-seeking function of a trial").

The only exception to this rule occurs when a defendant's statements are involuntary.  Involuntary statements are "extracted by any sorts of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence."  Beaty v. Schriro, 509 F.3d 994, 999 (9th Cir. 2007).  "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne."  United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988).

Here, even if defendant successfully argues that her statements

made during the July 15, 2013 interview were in violation of <u>Miranda</u>, the statements were neither involuntary nor coerced.  The officers did not threaten her, harm her, or otherwise force her to respond. Similarly, the officers did not make any promises or otherwise improperly influence defendant to answer their questions.  Because defendant's statements were voluntary, they are admissible against her for impeachment.  <u>See, e.g.</u>, <u>James v. Illinois</u>, 493 U.S. 307, 308-09 (1990) ("The impeachment exception to the exclusionary rule permits the prosecution in a criminal proceeding to introduce illegally obtained evidence to impeach the defendant's own testimony."); <u>Michigan v. Harvey</u>, 494 U.S. 344, 351 (1990).

**B.  Case Agent's Lay Testimony Will Aid the Jury's Understanding of the Certain Evidence**

The government intends to seek to elicit lay testimony from the lead case agent, FBI Special Agent Joseph Talamantez, regarding the meaning of certain recorded statements, based on his knowledge of the investigation.

Lay opinion testimony is admissible if it is (1) "rationally based on the perception of the witness," (2) "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  In <u>United States v. Gadson</u>, the Ninth Circuit made clear that such testimony, where based on the law enforcement witnesses' personal observations and direct knowledge of the investigation, falls under Federal Rule of Evidence 701 and does <u>not</u> qualify as expert testimony governed by Federal Rule of Evidence 702.

> In applying Rule 701 to the lay opinion testimony of law enforcement officers, we have held that an officer's interpretation of intercepted phone calls may meet Rule 701's "perception" requirement when it is an interpretation "of ambiguous conversations based upon [the officer's] direct knowledge of the investigation." United States v. Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007); see also United States v. Simas, 937 F.2d 459, 464-65 (9th Cir. 1991) (finding no abuse of discretion in admitting officers' lay testimony "concerning their understanding of what [defendant] meant to convey by his vague and ambiguous statements").

763 F.3d 1189, 1206 (9th Cir. 2014).[4]

The Court went on:

> In Kevin Freeman, for instance, we held that once the government established a foundation, a police officer could provide lay witness opinion testimony regarding the meaning of statements in the defendant's intercepted phone calls because the testimony was based on the officer's "direct perception of several hours of intercepted conversations—in some instances coupled with direct observation of [the defendants]—and other facts he learned during the investigation." 498 F.3d at 904-05; see also United States v. El-Mezain, 664 F.3d 467, 513-14 (5th Cir. 2011) (allowing lay opinion testimony interpreting telephone calls when "the agents' opinions were limited to their personal perceptions from their investigation of this case"); United States v. Rollins, 544 F.3d 820, 830-33 (7th Cir. 2008) (finding no error in the district court's decision to allow the agent's testimony regarding his "impressions" of recorded conversations when the testimony was "based on the agent's perceptions derived from the investigation of this particular conspiracy").

Id at 1207-08.

Such testimony is admissible even if the testifying officer was not a participant in the recorded conversations. Kevin Freeman, 498 F.3d at 904; see also United States v. Jayyousi, 657 F.3d 1085, 1102

---

[4] The majority of the circuits allow officers to provide interpretations of recorded conversations based on their knowledge of the investigation, subject to various safeguards. See United States v. Albertelli, 687 F.3d 439, 444-48 (1st Cir. 2012); United States v. El-Mezain, 664 F.3d 467, 513-14 (5th Cir. 2011); United States v. Jayyousi, 657 F.3d 1085, 1102-03 (11th Cir. 2011); United States v. Rollins, 544 F.3d 820, 830-33 (7th Cir. 2008); United States v. Garcia, 994 F.2d 1499, 1506-07 (10th Cir. 1993); United States v. De Peri, 778 F.2d 963, 977-78 (3d Cir. 1985).

(11th Cir. 2011) (holding that a lay witness's testimony was admissible even though "he did not personally observe or participate in the defendants' conversations").

The reason such law enforcement testimony is regularly admitted in criminal trials is because it serves an important jury function.

> Lay witness testimony regarding the meaning of ambiguous conversations based on the witness's direct perceptions and experience may also prove "helpful to the jury" for purposes of Rule 701. See Kevin Freeman, 498 F.3d at 904-05 (agent's "understanding of ambiguous phrases" based on the "direct perception of several hours of intercepted conversations" along with "direct observation" of defendants and "other facts he learned during the investigation" resulted in testimony that "proved helpful to the jury in determining what the [co-conspirators] were communicating during the recorded telephone calls"); see also Rollins, 544 F.3d at 832-33 (agent's testimony based on listening to every intercepted conversation, and other "personal observations and perceptions" related to the specific case at issue "assisted the jury in determining several facts in issue").

Gadson, 763 F.3d at 1207.

Courts have admitted opinion testimony by law enforcement agents on a number of other issues too, such as (1) the modus operandi of drug traffickers, United States v. Espinosa, 827 F.2d 604, 612 (9th Cir. 1987) (holding that district court properly admitted law enforcement officer's expert testimony expert on the modus operandi of narcotics traffickers, including use of "stash pads" for drugs); (2) the use of guns by drug traffickers, United States v. Perez, 116 F.3d 840, 848 (9th Cir. 1997); and (3) a defendant's apparent attempt to avoid surveillance, United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987).  An experienced narcotics agent's opinion testimony may be based in part on information from other agents familiar with the issue.  United States v. Beltran-Rios, 878 F.2d 1208, 1213 n.3 (9th Cir. 1989).

13

1    Here, Special Agent Talamantez personally participated in nearly
2    every significant investigative step in this case, which included
3    listening to essentially every recording, reading every kite, and
4    being physically present at or responding to many of the significant
5    events.  As such, the Circuit well supports his testimony whereby he
6    will employ his significant knowledge of the case to help the jury
7    navigate and interpret the sometimes complex, concealed, or just
8    chaotic recorded written or oral statements in this case.

9    **C.   Expert Opinion Testimony**

10    A qualified expert witness may provide opinion testimony on a
11    fact at issue if specialized knowledge will assist the trier of fact.
12    Fed. R. Evid. 702.  The Court has broad discretion to determine
13    whether to admit expert testimony.  <u>United States v. Andersson</u>, 813
14    F.2d 1450, 1458 (9th Cir. 1987).  Expert opinion may be based on
15    hearsay or facts not in evidence, where the facts or data relied upon
16    are of the type reasonably relied upon by experts in the field.  Fed.
17    R. Evid. 703.  An expert may also provide opinion testimony even if
18    it embraces an ultimate issue to be decided by the trier of fact, as
19    long as this issue does not pertain to the ultimate question of
20    defendant's mental state.  Fed. R. Evid. 704.

21    **D.   Relevant Conspiracy Law**

22    "The agreement need not be explicit; it may be inferred from the
23    defendant's acts pursuant to a fraudulent scheme or from other
24    circumstantial evidence."  <u>United States v. Cloud</u>, 872 F.2d 846, 852
25    (9th Cir. 1989).  The government need not prove direct contact
26    between co-conspirators or the existence of a formal agreement;
27    instead, an agreement constituting a conspiracy may be inferred from
28    the acts of the parties and other circumstantial evidence indicating

concert of action for the accomplishment of a common purpose.  See United States v. Garza, 980 F.2d 546, 552-53 (9th Cir. 1992). Moreover, "[w]ithin reasonable limits, the precise date of the [conspiracy] offense is not required."  United States v. Hultgren, 713 F.2d 79, 89 (5th Cir. 1983).

It is not necessary for the government to show that the defendant knew "the exact scope of the conspiracy, the identity and role of each of the co-conspirators, or the details of the operations or any particular plan."  United States v. Thomas, 586 F.2d 123, 132 (9th Cir. 1978).  However, the government must prove that the defendant was aware of "the essential nature of the plan." Blumenthal v. United States, 332 U.S. 539, 557 (1947); United States v. Krasovich, 819 F.2d 253, 255-56 (9th Cir. 1987).

The key element of proof as to any specific co-conspirator is the showing that she knew, or had reason to know, of the participation of others in the illegal plan, and that she knew, or had reason to know, that the benefits to be derived from the operation were probably dependent upon the success of the entire venture.  United States v. Abushi, 682 F.2d 1289, 1293 (9th Cir. 1982).  Once a conspiracy is proven, evidence establishing beyond a reasonable doubt the defendant's connection to that conspiracy -- even if the connection is slight -- is sufficient to convict her of knowingly participating in the conspiracy.  United States v. Hubbard, 96 F.3d 1223, 1227 (9th Cir. 1996).

Once a person becomes a member of a conspiracy, that person remains a member until that person withdraws from it.  (9th Cir. Model Jury Instruction No. 8.24.)  "[E]stablishing individual withdrawal [is] a burden that rest[s] firmly on the defendant

regardless of when the purported withdrawal took place." Smith v. United States, 133 S. Ct. 714, 719 (2013). A conspirator can continue to be held accountable for acts of conspirators after she has been arrested unless she has withdrawn. United States v. Hill, 42 F.3d 914, 917 (5th Cir. 1995). Additionally, there is no "automatic termination" rule simply because the government has defeated the conspiracy's objective. See, e.g., United States v. Jimenez Recio, 537 U.S. 270, 275 (2003). Finally, because the crime of conspiracy is complete upon entering into an unlawful agreement, despite the absence of an overt act, the government does not have the burden to disprove a defendant's withdrawal from the conspiracy. United States v. Francis, 916 F.2d 464, 466 (8th Cir. 1990). "Passive nonparticipation in the continuing scheme is not enough to sever the meeting of the minds that constitutes the conspiracy." Smith, 133 S. Ct. at 719.

### E.    Law Related to Racketeering Conspiracy

#### 1.    Enterprise

In order to establish the existence of an associated-in-fact enterprise, the government must submit proof "(1) of an ongoing organization, formal or informal, (2) which exhibits a hierarchical or consensual decision-making structure beyond that inherent in the alleged racketeering activity, and (3) in which the various associates function as a continuing unit." United States v. Fernandez, 388 F.3d 1199, 1223 (9th Cir. 2004).

In order for a group of individuals to qualify as an enterprise, "the [decision-making] structure should provide some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis." Chang v. Chen, 80 F.3d 1293, 1299

1   (9th Cir. 1996).  An association-in-fact enterprise under RICO does
2   not require any particular organizational structure, separate or
3   otherwise.  Odom v. Microsoft, 486 F.3d 541, 551 (9th Cir. 2007).
4   RICO reaches peripheral figures as well as the central insiders in
5   the enterprise.  United States v. Tille, 729 F.2d 615, 620 (9th Cir.
6   1984).

7              2.   Interstate Commerce

8        The courts have held that a slight effect on interstate commerce
9   is all that is required for a RICO violation.  United States v. Rone,
10  598 F.2d 564, 573 (9th Cir. 1979).  In fact, only a "de minimis"
11  effect on interstate commerce is required to meet RICO's
12  jurisdictional element.  Fernandez, 388 F.3d at 1218.  It is the
13  activities of the enterprise, not each predicate act, which must
14  affect interstate commerce.  United States v. Bagnariol, 665 F.2d
15  877, 892 (9th Cir. 1981); Rone, 598 F.2d at 573.

16       Here, the requisite effect on interstate commerce will be
17  established by evidence that one of the enterprise's primary
18  activities was to engage in drug trafficking.  See United States v.
19  Alvarez, 860 F.2d 801, 820 (7th Cir. 1988) (trafficking in heroin
20  which comes from Mexico satisfies RICO interstate commerce
21  requirement); cf. United States v. Tisor, 96 F.3d 370, 375 (9th Cir.
22  1996) ("intrastate drug activity affects interstate commerce");
23  United States v. Rodriguez, 360 F.3d 949, 955-56 (9th Cir. 2004)
24  (indictment which alleged robbery from drug dealers satisfied Hobbs
25  Act's interstate commerce jurisdictional requirement "[b]ecause the
26  trafficking of narcotics is a federally-regulated activity
27  implicating interstate commerce . . . . Indeed, we believe that a
28  conspiracy to steal cocaine alone suffices to establish a connection

17

1  to foreign commerce, because, as other circuits have found, 'all
2  cocaine originates overseas.').

3        3.   Pattern of Racketeering Activity

4        In order to establish that the affairs of the enterprise were
5  conducted through a pattern of racketeering activity, it is
6  sufficient that the government demonstrate that "the predicate
7  offenses are related to the activities of th[e] enterprise." United
8  States v. Scotto, 641 F.2d 47, 54 (2d Cir. 1980).

9        4.   RICO Conspiracy

10       The charge of racketeering conspiracy requires proof of criminal
11  activity by members of the Michael Lerma Cell of the Mexican Mafia to
12  show the enterprise's nature and the requisite pattern of
13  racketeering activity.  See Salinas v. United States, 522 U.S. 52,
14  63-64 (1997).  "The partners in the criminal plan must agree to
15  pursue the same criminal objective and may divide up the work, yet
16  each is responsible for the acts of each other . . . ."  Id.
17  (internal citation omitted).  "If [the RICO] conspirators have a plan
18  which calls for some conspirators to perpetrate the crime and others
19  to provide support, the supporters are as guilty as the
20  perpetrators."  Id. (internal citations omitted).

21       "Proof of [RICO] elements may well entail evidence of numerous
22  criminal acts by a variety of persons, and each defendant in a RICO
23  case may reasonably claim no direct participation in some of those
24  acts.  Nevertheless, evidence of those acts is relevant to the RICO
25  charges against each defendant[.]"  United States v. DiNome, 954 F.2d
26  839, 843 (2d Cir. 1992).  For RICO conspiracies, "[a] conspiracy may
27  exist even if a conspirator does not agree to commit or facilitate
28  each and every part of the substantive offense."  Salinas, 522 U.S.

at 63.  All that is required is that the defendant "knew about and agreed to facilitate the scheme."  Id. at 66.

### 5. Evidence of Crimes Not Specifically Charged Against Defendant

In RICO cases, courts typically admit evidence of crimes not specifically charged against a defendant or not committed by the defendant.

For example, in United States v. Finestone, 816 F.2d 583, 585-87 (11th Cir. 1987), the court upheld the admission of evidence of coconspirators' commission of a murder, kidnaping and narcotics trafficking that the RICO defendant did not commit because: (1) it showed the continuation of the RICO conspiracy within the five year statute of limitations period, (2) was admissible to prove the coconspirators' pattern of racketeering activity, and, (3) their participation in the RICO conspiracy and overt acts in furtherance of it.

Other courts have held similarly.  See, e.g., United States v. Richardson, 167 F.3d 621, 625-26 (D.C. Cir. 1999) (continuity may be established by the totality of all the codefendants' unlawful conduct); United States v. Miller, 116 F.3d 641, 682 (2d Cir. 1997) (admission of evidence of uncharged murders committed by some defendants and other enterprise members to show the existence of the enterprise and acts in furtherance of the conspiracy); United States v. Krout, 66 F.3d 1420, 1425 (5th Cir. 1995) (admitted to establish that murder and extreme violence were part of the enterprise's objectives and manner and means); United States v. DiSalvo, 34 F.3d 1204, 1221 (3d Cir. 1994) (upholding admission of defendant's uncharged acts to establish the existence of the enterprise and the

1   defendant's participation in and knowledge of the enterprise); <u>United</u>
2   <u>States v. Ellison</u>, 793 F.2d 942, 949 (8th Cir. 1986) (uncharged
3   crimes of violence by other members of the enterprise admitted to
4   establish existence of enterprise); <u>United States v. Murphy</u>, 768 F.2d
5   1518, 1534-35 (7th Cir. 1985) (proper to admit evidence of uncharged
6   bribes paid to defendant to prove overt acts in furtherance of the
7   conspiracy and to prove a common plan and absence of mistake to rebut
8   defendant's character evidence).

9       **F.   Co-Conspirator Statements**

10       Declarations by one co-conspirator during the course of and in
11   furtherance of the conspiracy may be used against another conspirator
12   because such declarations are not hearsay.  <u>See</u> Fed. R. Evid.
13   801(d)(2)(E).  Further, statements made in furtherance of a
14   conspiracy were expressly held by the Supreme Court in <u>Crawford v.</u>
15   <u>Washington</u>, 541 U.S. 36, 56 (2004) to be "not testimonial" such that
16   their admission does not violate the Confrontation Clause.  As such,
17   the admission of co-conspirator statements pursuant to Fed. R. Evid.
18   801(d)(2)(E) requires only a foundation that: (1) the declaration was
19   made during the life of the conspiracy; (2) it was made in
20   furtherance of the conspiracy; and (3) there is, including the co-
21   conspirator's declaration itself, sufficient proof of the existence
22   of the conspiracy and of the defendant's connection to it.  <u>See</u>
23   <u>Bourjaily v. United States</u>, 483 U.S. 171, 173, 181 (1987).

24       The government must prove by a preponderance of the evidence
25   that a statement is a co-conspirator declaration in order for the
26   statement to be admissible under Rule 801(d)(2)(E).  <u>Bourjaily</u>, 483
27   U.S. at 176; <u>United States v. Crespo de Llano</u>, 838 F.2d 1006, 1017
28   (9th Cir. 1987).  Whether the government has met its burden is to be

determined by the trial judge, and not the jury.  United States v. Zavala-Serra, 853 F.2d 1512, 1514 (9th Cir. 1988).  The Court may rely on inadmissible evidence, such as a co-conspirator's plea agreement, in determining whether the 801(d)(2)(E) exception applies.  Cf. United States v. Gil, 58 F.3d 1414, 1420 (9th Cir. 1995) (the preliminary determination of whether FRE 801(d)(2)(E) applies is to be made "by the court, not the jury, pursuant to Fed. R. Evid. 104(a); Fed. R. Evid. 104(a) ("the court must decide any preliminary question about whether . . . evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege").

The trial court has discretion to determine whether the government may introduce co-conspirator declarations before establishing the conspiracy and the defendant's connection to it.  United States v. Loya, 807 F.2d 1483, 1490 (9th Cir. 1987).  It also has the discretion to vary the order of proof in admitting co-conspirator statements.  Id.  The court may allow the government to introduce co-conspirator declarations before laying the required foundation under the condition that the declarations will be stricken if the government fails ultimately to establish by independent evidence that the defendant was connected to the conspiracy.  Id.; United States v. Spawr Optical Research, Inc., 685 F.2d 1076, 1083 (9th Cir. 1982).

To be admissible under Federal Rule of Evidence 801(d)(2)(E) as a statement made by a co-conspirator in furtherance of the conspiracy, a statement must "further the common objectives of the conspiracy," or "set in motion transactions that [are] an integral part of the [conspiracy]."  United States v. Arambula-Ruiz, 987 F.2d

21

599, 607-08 (9th Cir. 1993); United States v. Yarbrough, 852 F.2d 1522, 1535 (9th Cir. 1988). Such statements are admissible whether or not they actually result in any benefit to the conspiracy. United States v. Williams, 989 F.2d 1061, 1068 (9th Cir. 1993); United States v. Schmit, 881 F.2d 608, 612 (9th Cir. 1989). Thus, co-conspirator declarations need not be made to a member of the conspiracy to be admissible under Rule 810(d)(2)(E) and can be made to government informants and undercover agents. Zavala-Serra, 853 F.2d at 1516 (statements to informants and undercover agents); Tille, 729 F.2d at 620 (statements to informants); United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir. 1985) (statements to undercover agent). Declarations of an unindicted co-conspirator made in furtherance of the conspiracy may be used against a charged conspirator. See United States v. Nixon, 418 U.S. 683, 701 (1974); Williams, 989 F.2d at 1067.

Courts have interpreted the "in furtherance of" requirement broadly and have considered, among others, the following co-conspirator declarations as being made "in furtherance of the conspiracy":

1.   statements made to induce enlistment in the conspiracy (United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir. 1993));

2.   statements made to keep a conspirator abreast of a co-conspirator's activity, to induce continued participation in a conspiracy, or to allay the fears of a co-conspirator (Arias-Villanueva, 998 F.2d at 1502; see also United States v. Ammar, 714 F.2d 238, 252 (3d Cir. 1983) ("[s]tatements between conspirators which provide reassurance, serve to maintain trust and cohesiveness

22

among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy . . . .")); 

3.   statements made to prompt action in furtherance of the conspiracy by either of the participants to the conversation (United States v. Layton, 720 F.2d 548, 556 (9th Cir. 1983)); 

4.   statements related to the concealment of the criminal enterprise (Tille, 729 F.2d at 620; Garlington v. O'Leary, 879 F.2d 277, 283 (7th Cir. 1989)); 

5.   statements seeking to control damage to an ongoing conspiracy (Garlington, 879 F.2d at 283); 

6.   statements made to reassure members of the conspiracy's continued existence (Yarbrough, 852 F.2d at 1535); 

7.   statements by a person involved in the conspiracy to induce a buyer's purchase of contraband by assuring the buyer of the person's ability to consummate the transaction (Echeverry, 759 F.2d at 1457); 

8.   statement identifying another co-conspirator as source for the contraband to be sold to purchaser (United States v. Lechuga, 888 F.2d 1472, 1480 (5th Cir. 1989)); 

9.   "bragging," boasts and other conversation designed to obtain the confidence, or allay the suspicions, of another conspirator (or apparent conspirator who actually was an undercover agent) (United States v. Santiago, 837 F.2d 1545, 1549 (11th Cir. 1988); Lechuga, 888 F.2d at 1480; United States v. Miller, 664 F.2d 94, 98 (5th Cir. 1981)); and 

10.   statements that refer to another conspirator as the boss, the overseer, or sir (United States v. Barnes, 604 F.2d 121, 157 (2d Cir. 1979)).

### G.   Other Hearsay Exceptions

#### 1.   Past Recollection Recorded

Under Federal Rule of Evidence 803(5), a record may be read into evidence if it (1) is on a matter the witness once knew about but now cannot recall well enough to testify truthfully and accurately; (2) was made or adopted by the witness when the matter was fresh in the witness's memory; and (3) accurately reflects the witness's knowledge.  Fed. R. Evid. 803(5).

#### 2.   Present Sense Impression

Under Federal Rule of Evidence 803(1), a statement "describing or explaining an event or condition, made while or immediately after the declarant perceived it," is admissible.

#### 3.   Defendant's Hearsay Statements

Defendant's statements are admissible only if offered against her; otherwise, they fall within the scope of the rule against hearsay.  Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).  The hearsay rule prohibits a defendant from obtaining the benefit of testifying without subjecting himself to cross-examination by placing his self-serving prior statements before the jury through other witnesses.  Fed. R. Evid. 801(c); Fernandez, 839 F.2d at 640; United States v. Waters, 627 F.3d 345, 385 (9th Cir. 2010) (holding that defendant's exculpatory statement proclaiming innocence "is clearly hearsay, and was therefore properly excluded under Rule 801(a)"); United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (holding that district court did not commit error by prohibiting defendant from cross-examining government witness concerning false exculpatory statements

made during the same interview in which defendant made inculpatory statements).

## H.   Business Records

At trial, the government anticipates offering business records into evidence.  Such records of "regularly conducted activity" fall within an exception to the rule against hearsay and are admissible either through "the testimony of the custodian or another qualified witness" or "by a certification that complies with Rule 902(11)." Fed. R. Evid. 803(6)(D).  In this case, absent a stipulation, the government will admit these records with a certification that complies with Rule 902(11).  The government previously provided copies of those records in discovery to defense counsel and has or will provide the corresponding certifications by appropriately qualified custodians of records, thereby affording opposing counsel "a fair opportunity to challenge them."  Fed. R. Evid. 902(11).  To date, defendant has not raised any objection to the admission of any of these business records.

## I.   Charts and Summaries

The government will use charts and summaries in order to streamline its case-in-chief and provide an aid to the jury.  Under Rule 1006, the Court may admit summaries into evidence where those summaries are based on voluminous, already-admitted exhibits.  See, e.g., United States v. Rizk, 660 F.3d 1125, 1130-31 (9th Cir. 2011). "Rule 1006 permits admission of summaries based on voluminous records that cannot readily be presented in evidence to a jury and comprehended."  Id.; see also United States v. Boulware, 470 F.3d 931, 936 (9th Cir. 2006) (upholding district court's decision to admit summary chart of already-admitted evidence where district court

1   "no doubt believed that it would be helpful to have the voluminous

2   financial materials reduced to summary form").

3        The government will seek to admit (1) a summary chart of

4   selected jail calls in this case, which documents the exhibit number,

5   date, time, caller, pin number, phone number called, and participants

6   on the call; (2) a summary chart of jail calls in this case from

7   Seferino Gonzalez to defendant; (3) a summary chart of calls between

8   defendant and Cheryl Castaneda-Perez; (4) a summary chart of calls

9   between defendant and Jose Gonzalez; and (5) a map showing the

10  approximate locations where the phone numbers (909)670-9308 and (909)

11  268-0640 were operating.  The government believes that such charts

12  will significantly aid the jury and provide context for the case, and

13  that they can be limited an appropriate instructions at the time of

14  its admission indicating that such charts are evidence but they are

15  not, standing alone, conclusive of any element.

16       **J.   Photographs**

17       The government intends to introduce photographs of the relevant

18  individuals, photographs taken on July 14, 2013, in and around 183

19  Cypress Street, Covina, California, photographs of 624 Hendrix

20  Avenue, Claremont, California, photographs of the recovered gun,

21  photographs of LACJ dorm 712, photographs of the "kitty," photographs

22  of the March 24, 2013 shooting of Fred Aguirre, photographs of the

23  July 27, 2013 assault of LACJ inmate Sal Luna, and photographs taken

24  during a December 18, 2013 search of Cheryl Castaneda Perez's house.

25       Photographs are generally admissible as evidence under Rule 401.

26  See United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977)

27  (photographs of crime scene admissible).  Photographs should be

28  admitted so long as they fairly and accurately represent the event or

1   object in question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th

2   Cir. 1978).  Also, "[p]hotographs are admissible as substantive as

3   well as illustrative evidence."  United States v. May, 622 F.2d 1000,

4   1007 (9th Cir. 1980).  Photographs may be authenticated by a witness

5   who "identif[ies] the scene itself [in the photograph] and its

6   coordinates in time and place."  See Lucero v. Stewart, 892 F.2d 52,

7   55 (9th Cir. 1989) (internal quotation marks omitted).

8       Photographs are authenticated if a witness testifies that it is

9   an accurate representation of facts of which the witness has personal

10  knowledge, and "the witness who lays the authentication foundation

11  need not be the photographer, nor need the witness know anything of

12  the time, conditions, or mechanisms of the taking of the picture."

13  32 McCormick on Evid. § 215 (7th ed.); see also Fed. R. Evid. 1002

14  advisory committee's note.  Thus, for example, it is suitable for a

15  witness to identify a photograph by the individuals depicted in it

16  regardless of his knowledge of the particular circumstances under

17  which the photograph was taken.  "Under the Federal Rules, the

18  witness identifying the item in a photograph need only establish that

19  the photograph is an accurate portrayal of the item in question."

20  People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir.

21  1985).  Indeed, "[a] photograph can be authenticated by someone other

22  than the photographer if he recognizes and identifies the object

23  depicted and testifies that the photograph fairly and correctly

24  represents it."  See United States v. Winters, 530 F. App'x 390, 395

25  (5th Cir. 2013) (citations and quotations omitted).

26      **K.   Pretrial Identification**

27      The government may admit E.N.'s and M.A.'s curbside

28  identification of defendant around 2 a.m. on July 15, 2013, a few

hours after the shooting on July 14, 2013.  The government may also admit E.N.'s identification of co-defendant and shooter, Jose Gonzalez, through a six-pack identification.

Courts analyze whether "an identification procedure is impermissibly suggestive" under "the totality of the circumstances," including: "(1) the witness's opportunity to view the criminal at the time of crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." United States v. Jones, 84 F.3d 1206, 1209-10 (9th Cir. 1996). Courts have allowed "suggestive procedures" as they recognize "the benefit of permitting witnesses to make an identification while the image of the perpetrator is still fresh in their minds." Id. at 1210.  "The fact that only one suspect is presented for identification does not make the identification procedure invalid." Id.

Jones is instructive.  There, witnesses to a robbery "had the opportunity during the robbery to get a good, complete look at the robber"; "were quite close to" the robber; were "focused on" the robber; and provided "accurate" descriptions of the robber to the police, except for his height.  Id.  About "ten to fifteen minutes after the crime," the witnesses were taken to the defendant who was in custody, next to a patrol car, and standing near two police officers.  Id.  Even though aspects of the "drive-by identification were clearly suggestive," the Court upheld the identification, concluding that "there was not a substantial likelihood of misidentification by the witnesses' curbside identification."  Id.

28

1    Likewise, courts have also permitted the admission of a

2    witness's pre-trial identification of a defendant through a six-pack

3    photo array.  See, e.g., United States v. Heard, 2022 WL 2662882, at

4    *1 (9th Cir. July 11, 2022).  In Heard, a witness "circled an image

5    of [one of the defendants] in a photographic lineup" and "wrote that

6    [defendant] shot [a victim]."  Id.  The district court permitted the

7    admission of the photo array at trial itself and testimony regarding

8    the photo array.  Id.  On appeal, the Ninth Circuit affirmed, finding

9    that the district court's "rulings regarding [the witness's]

10   testimony and the photo lineup were a reasonable exercise of its

11   discretion and a reasonable application of Rules 403 and 801(d)(1)."

12   Id.

13      **L.   Physical Evidence**

14      The government will seek to introduce physical evidence

15   recovered during the investigation, including the recovered gun and

16   fire bullet, and recorded oral statements.  Federal Rule of Evidence

17   901(a) provides that "[t]o satisfy the requirement of authenticating

18   or identifying an item of evidence, the proponent must provide

19   evidence sufficient to support a finding that the item is what the

20   proponent claims it is."  Accordingly, under Rule 901, issues of

21   authenticity and identification are treated as "a special aspect of

22   relevancy."  Fed. R. Evid. 901(a) (Advisory Committee Notes).

23      Rule 901(a) only requires the government to make a prima facie

24   showing of authenticity or identification "so that a reasonable juror

25   could find in favor of authenticity or identification."  United

26   States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (quoting

27   United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989)).

28   The authenticity of proposed exhibits may be proven by circumstantial

evidence.  See United States v. King, 472 F.2d 1, 9-11 (9th Cir. 1972).  If the government makes a prima facie showing of authenticity, the Court should admit the evidence.  See United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).  The credibility or probative force of the evidence offered is ultimately an issue for the trier of fact.  Chu Kong Yin, 935 F.2d at 996 (internal quotation marks omitted).

To be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. Fed. R. Evid. 901.  The Court may admit the evidence if there is a "reasonable probability the article has not been changed in important respects."  United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991) (quoting Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960)).  This determination is to be made by the trial judge and will not be overturned except for clear abuse of discretion.  Factors the Court may consider in making this determination include the nature of the item, the circumstances surrounding its preservation, and the likelihood of intermeddlers having tampered with it. Gallego, 276 F.2d at 917.

In establishing chain of custody as to an item of physical evidence, the government is not required to call all persons who may have come into contact with the piece of evidence.  Harrington, 923 F.2d at 1374.  Moreover, a presumption of regularity exists in the handling of exhibits by public officials.  Id.  Therefore, to the extent that alleged or actual gaps in the chain of custody exist, such gaps go to the weight of the evidence rather than to its admissibility.  Id.

### M.   Prison and Jail Records of Inmates

Prison and jail records identifying an inmate and documenting the bases and terms of incarceration (for example, fingerprints, photographs, and records of a judgment and sentence contained in an inmate's 'penitentiary packet') "are public records of routine and non-adversarial matters that fall within Rule 803(8)(B), and [are] admissible thereunder."  See United States v. Weiland, 420 F.3d 1062, 1074-75 (9th Cir. 2005) (fingerprinting and photographing a suspect, and cataloguing a judgment and sentence are the types of routine and unambiguous matters to which the public records hearsay exception in Rule 803(8)(B) is designed to apply"); United States v. Orozco, 590 F.2d 789, 794 (9th Cir. 1979); United States v. Watson, 650 F.3d 1084, 1090-91 (8th Cir. 2011) (holding that "penitentiary records containing booking photos and fingerprint cards . . . were admissible as self-authenticating public records and admission did not violate the Confrontation Clause").

### N.   Cross-Examination of Defendant

The government does not know if defendant intends to testify at trial.  If defendant does testify, the government should be permitted to fully cross-examine her.

A defendant who testifies at trial waives her right against self-incrimination and subjects herself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination.").

1    A defendant has no right to avoid cross-examination on matters

2  that call into question her claim of innocence.  United States v.

3  Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  The scope

4  of a defendant's waiver is co-extensive with the scope of relevant

5  cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th

6  Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir.

7  1985) ("What the defendant actually discusses on direct does not

8  determine the extent of permissible cross-examination or his waiver.

9  Rather, the inquiry is whether 'the government's questions are

10 reasonably related' to the subjects covered by the defendant's

11 testimony.").

12   The government is not required to provide notice of matters

13 about which it may seek to cross-examine defense witnesses, including

14 defendant, should they testify.

15   **O.   Character Evidence**

16   The Supreme Court long ago recognized that character evidence --

17 particularly cumulative character evidence -- has weak probative

18 value and great potential to confuse the issues and prejudice the

19 jury.  See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).

20 The Court has thus given trial courts wide discretion to limit the

21 presentation of character evidence.  Id.

22   In addition, the form of the proffered evidence must be proper.

23 Federal Rule of Evidence 405(a) sets forth the sole methods for which

24 character evidence may be introduced.  It specifically states that,

25 where evidence of a character trait is admissible, proof may be made

26 in two ways: (1) by testimony as to reputation and (2) by testimony

27 as to opinion.

28   Thus, a defendant may not introduce specific instances of her

32

good conduct through the testimony of others.  See Michelson, 335 U.S. at 477.  On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue.  See Fed. R. Evid. 405(a).  In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests.  See Michelson, 335 U.S. at 481.  The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue.  See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

### P.   Jury Nullification

The Court should exclude any evidence or argument relating to any jury nullification defense.  "A court has the duty to forestall or prevent nullification, including by firm instruction or admonition."  United States v. Kleinman, 880 F.3d 1020, 1032 (9th Cir. 2017) (cleaned up).  "[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.  Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring).  Rather, "[v]erdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant."  Similarly, a defendant has no right to a jury nullification instruction.  United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992).  Finally, under Federal Rules of Evidence 401 and 403, such evidence, arguments, or instructions are not relevant to any valid defense to the charges and thus would unnecessarily confuse the issues and mislead the jury.

In particular, the Court should exclude any evidence or argument

33

at trial regarding any alleged delay in the government's
investigation of defendant's guilt in this case.  Any alleged delay
in taking investigative steps is not a question to be resolved by the
jury.  United States v. Reed, 575 F.3d 900, 919 (9th Cir. 2009) ("It
is well-settled that the question of the competency of the evidence
by reason of the legality or otherwise of its seizure is a question
of fact and law for the court and not for the jury.").  Federal Rule
of Criminal Procedure 12 was expressly drafted to require resolution
of such issues in advance of trial by the court and "to eliminate
from the trial disputes over police conduct not immediately relevant
to the question of guilt."  Fed. R. Crim. P. 12, N. Adv. Comm.
(1974); see also Jones v. United States, 362 U.S. 257, 264 (1960),
overruled on other grounds by United States v. Salvucci, 448 U.S. 83
(1980).

**Q.   Affirmative Defenses**

A defendant must provide written notice of his intent to rely on
a defense of entrapment, mental incapacity, alibi, or any other
affirmative defense.  See Fed. R. Crim. P. 12.1-12.3; United States
v. Vasquez-Landaver, 527 F.3d 798, 802 (9th Cir. 2008).  Defendant
has given no such notice.  In fact, defense counsel has told the
government that defendant does not intend to present a duress
defense.  Should defendant try to rely on such a defense, the
government would object and to move to preclude it.

**R.   Reciprocal Discovery**

Rule 16 requires a defendant to produce to the government three
categories of evidence that she intends to introduce at trial:
(1) documents and tangible objects; (2) reports of any examinations
or tests; and (3) expert witness disclosures.  Fed. R. Crim. P.

1   16(b)(1).  Rule 16 imposes on a defendant a continuing duty to

2   disclose these categories of materials.  Fed. R. Crim. P. 16(c).

3   Where a party fails to produce discovery as required by Rule 16, the

4   district court may "prohibit the party from introducing evidence not

5   disclosed, or it may enter such other order as it deems just under

6   the circumstances."  Fed. R. Crim. P. 16(d)(2)(C), (D).

7          Despite the government's repeated requests, defendant produced

8   no reciprocal discovery and made no expert witness disclosures.

9   Accordingly, to the extent that there exists reciprocal discovery to

10  which the government is entitled under Federal Rules of Criminal

11  Procedure 12.1, 12.2, 16(b), or 26.2 that defendant has not produced,

12  the government would seek to have such materials excluded at trial.

13  See United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001)

14  (upholding exclusion under Rule 16 of audiotape that defendant did

15  not produce in pretrial discovery but sought to introduce on cross-

16  examination of government witness, not to impeach, but as substantive

17  "evidence in chief" that someone else committed the crime).

18       **S.   Discretion as to Order of Proof**

19         The order of proof is a matter committed to the discretion of

20  the district court, which may conditionally introduce evidence or

21  otherwise permit deviations from the natural order of a case.  See,

22  e.g., United States v. Zemek, 634 F.2d 1159, 1169 (9th Cir. 1980);

23  see also United States v. Perez, 658 F. 658 (court may admit co-

24  conspirator statement subject to motion to strike if foundation for

25  admissibility not laid, so long as the motion to strike would cure

26  any defect); United States v. Turner, 528 F.2d 143, 162 (9th Cir.

27  1975) ("The trial judge has wide discretion in supervising the order

28  of proof in a conspiracy case."); United States v. Avendano, 455 F.2d

1   975, 975 (9th Cir. 1972) (calling witnesses out-of-order).

2   **T.   Jury Questions**

3   Under the law of this circuit, "[t]he necessity, extent and

4   character of additional instructions are matters within the sound

5   discretion of the trial court." United States v. Collom, 614 F.2d

6   624, 631 (9th Cir. 1979) (citations omitted).  However, the district

7   court has an obligation, when a jury requests clarification on an

8   issue, to "clear away the confusion 'with concrete accuracy.'"

9   United States v. McCall, 592 F.2d 1066, 1068 (9th Cir. 1979) (quoting

10  Bollenbach v. United States, 326 U.S. 607, 612-13 (1946).  In some

11  circumstances, this may require giving a supplementary jury

12  instruction.  United States v. McIver, 186 F.3d 1119, 1130 (9th Cir.

13  1999) ("By asking 'what is manufacturing?' the jury clearly indicated

14  its confusion on this issue. The district court correctly decided

15  that the jury instructions were inadequate without a definition of

16  manufacturing. Rather than 'confusing the jury' by giving the

17  instruction, as [defendants] contend, the district court judge was

18  eliminating confusion, as required by McCall.").

19  Thus, the district court may provide specific answers to a

20  jury's questions when the jury has "ma[de] explicit its difficulties

21  [with the law]." United States v. Frega, 179 F.3d 793, 809 (9th Cir.

22  1999).  Where the jury has shown such confusion, a general response

23  that simply directs the jury to the court's instructions can be

24  deemed confusing and misleading.  Id. at 810 (district court

25  committed error where it responded to a jury question by "telling the

26  jury that it could consider 'all of the evidence that [it had] heard

27  or seen during the trial . . . as to all counts'").  Thus, upon a

28  showing of confusion the Court may direct jurors to specific jury

1    instructions and/or may provide supplemental instructions, provided
2    neither are incorrect statements of the law.  McIver, 186 F.3d at
3    1131 (No plain error because "the supplemental instruction consisted
4    of a correct statement of law.  The court merely defined a term used
5    in the original charge to the jury, and the instruction was essential
6    to clear up the jury's confusion.").

7        U.    **Opening Statements**

8        "An opening statement has a narrow purpose and scope": (1) "to
9    state what evidence will be presented"; (2) "to make it easier for
10   the jurors to understand what is to follow"; and (3) "to relate parts
11   of the evidence and testimony to the whole."  United States v.
12   Dinitz, 424 U.S. 600, 612 (1976).  Opening statement "is not an
13   occasion for argument."  Id. (emphasis added).  Opening statement
14   should be "an outline of a party's anticipated proof" and "should not
15   refer to matters that are not to be presented as evidence."  United
16   States v. McCabe, No. 96-30092, 1997 WL 753348, at *4 (9th Cir.
17   1997).  A trial court "can exclude irrelevant facts and stop argument
18   if it occurs" during opening statements.  Id. (holding district court
19   properly interrupted defense counsel's opening statement where it
20   "was argumentative, inflammatory, and prejudicial").

21       Exhibits may be used by the government in the opening statement,
22   and so long as the opening statement "avoids references to matters
23   that cannot be proved or would be inadmissible, there can be no
24   error, much less prejudicial error."  United States v. De Peri, 77826
25   F.2d 963, 979 (3d Cir. 1985); see also United States v. Rubino, 43127
26   F.2d 284, 290 (6th Cir. 1970).  In particular, the government
27   currently believes it will likely use photographs of the relevant
28   individuals, photographs taken on July 14, 2013, in and around 183

Cypress Street, Covina, California, photographs of the recovered gun, photographs of the Los Angeles County Jail, and demonstratives of the Mexican Mafia.  The government intends to identify the photographs that it will use in its opening to the defense.

**IV.  CONCLUSION**

The government respectfully reserves the right to supplement or modify this Trial Memorandum as may be appropriate.